EL PUEBLO, DEMANDANTE Y APELADO, *v.* GAUTIER, ACUSADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Ponce en causa por venta de leche adulterada.

No. 658.—Resuelto en abril 24, 1914.

LECHE ADULTERADA—ADULTERACIÓN DE LA LECHE—INTENCIÓN DE OFRECERLA EN VENTA.—De acuerdo con la sección 1ª de la Ley No. 59 de 1910, el solo hecho de adulterar o diluir la leche no es penable si no se realiza con la intención de ofrecerla en venta, y por tanto cuando una persona está acusada de haber verificado ese hecho debe probársele que lo hizo con la intención de ofrecerla en venta.

ID.—Venta de Leche Adulterada—Esencia del Delito—Falta de Conoci-
miento de la Adulteración por el Acusado.—La sección 1ª. de la Ley
No. 59 de 1910, también castiga el mero hecho de tener u ofrecer en venta
leche adulterada o diluída, y en estos casos no es necesario probar que se
adulteró o diluyó con la intención de ofrecerla en venta, ni que la persona
acusada fué quien la adulteró, ni que sabía que estaba adulterada.

ID.—Venta de Leche Adulterada por el Dependiente—Responsabilidad del
Dueño del Establecimiento.—De acuerdo con la sección 1ª. de la Ley No.
59 de 1910, el dueño de un puesto de leche en el cual se venda leche adul-
terada o diluída, es responsable criminalmente de dicho delito, y nada importa
si la venta se hace por él o por medio de su dependiente.

Los hechos están expresados en la opinión.

Abogado del Pueblo: *Sr. Charles E. Foote, fiscal.*

Abogado del apelante: *Sr. R. Martínez Nadal.*

El Juez Asociado Sr. Aldrey, emitió la opinión del tri-
bunal.

Manuel S. Gautier estableció este recurso de apelación
contra la sentencia del Tribunal de Distrito de Ponce que le
condenó a sufrir la pena de un día de cárcel por delito con-
tra la salud pública por tener y ofrecer en venta como pura
leche adulterada de vaca.

Se admite por el apelante, y también lo admitió ante
el tribunal inferior, que la leche que fué ocupada en uno de
sus depósitos estaba adulterada por la adición de agua, así
como que es uno de los socios de la sociedad que es dueña
del depósito donde la leche se encontró. Parece que esa socie-
dad tiene varios establecimientos dedicados a la venta de
leche y que al frente de cada uno de ellos se halla un empleado
suyo.

Con tales antecedentes sostiene el apelante que el tribu-
nal inferior cometió error al declarar sin lugar una moción
de sobreseimiento que le hizo, fundada en que no se probó
que hubiese adulterado la leche "con la intención de ofre-
cerla en venta o venderla o que causara o permitiera su venta
u ofrecimiento de venta, o que la tuviere u ofreciere en venta,
o la vendiese sabiendo que estaba adulterada, o que hubiese
ordenado o consentido que su empleado hubiese ofrecido o
vendido leche adulterada o que siquiera el acusado conocía

o sabía que su empleado adulterase la leche o la ofreciere en venta.''

La sección 1ª. de la ley número 59 de 10 de marzo de 1910, que es la vigente sobre la materia, dice así:

"Toda persona que adulterare o diluyere leche con la intención de ofrecerla a la venta o que causare o permitiere que se ofrezca en venta y toda persona que la vendiere, ofreciere o tuviere en venta, será culpable de delito menos grave (*misdemeanor*) y castigada con encarcelamiento que· no exceda de un mes, y además de dicha pena se confiscará la leche adulterada: *Disponiéndose,* etc.''

Según esa disposición, se castiga al que realiza el acto de adulterar o diluir la leche siempre que lo haga con la intención de ofrecerla en venta; o en otras palabras, el solo hecho de adulterar o diluir la leche no es penable si no se realiza con la intención de ofrecerla en venta y por tanto cuando una persona está acusada de haber verificado ese hecho debe probársele que lo hizo con la intención de ofrecerla en venta. Pero cuando adulterada o diluída la vendiere, ofreciere o tuviere en venta, entonces no es necesario probar que se adulteró o diluyó con la intención de ofrecerla en venta, porque el hecho de venderla o de ofrecerla o de tenerla en venta demuestra que la adulteración se hizo con ese propósito.

La ley castiga el mero hecho de tener u ofrecer en venta leche adulterada o diluída, y no es necesario por tanto probar que la persona acusada fué quien la adulteró o que sabía que estaba adulterada. Por tanto es el **deber de toda** persona que se dedica al negocio de venta de leche, cerciorarse de que dicho artículo no está adulterado, si no quiere sufrir las consecuencias de su descuido, toda vez que la ley no tiene en cuenta si fué ella quien la adulteró sino solamente que la está vendiendo u ofreciendo en venta adulterada o diluída.

Esta cuestión fué ampliamente considerada por este Tribunal Supremo en el caso de *El Pueblo* v. *Ferraris,* 15

D. P. R., 813, en el que se llegó a la conclusión de que cuando en virtud del precepto de la ley, la intención fraudulenta es elemento esencial del delito de tener u ofrecer en venta leche adulterada o diluída, es indispensable probar ese extremo, pero que no es necesario probarlo cuando se castiga como delito el mero hecho de vender o tener en venta leche adulterada. Probablemente en vista de lo resuelto en este caso, ya que se declaró también que la ley entonces en vigor exigía que tal clase de venta fuera fraudulenta, fué modificada la ley pocos meses después y se promulgó la del año 1910 que suprimió la intención fraudulenta como elemento del delito de vender o tener u ofrecer en venta leche adulterada o diluída. La precedente doctrina fué ratificada por este tribunal después de estar en vigor la ley actual en el caso de *El Pueblo* v. *Calderón,* 17 D. P. R., 485, en el que dijimos:

"Insiste el apelante en que no adulteró la leche y que no hubo prueba de su intervención, pero la venta de leche adulterada es el delito prescrito por el estatuto que es el que se ha probado."

También los tribunales de los Estados Unidos han resuelto la misma cuestión en varias decisiones, de las que sólo transcribiremos las siguientes:

"La acusación en este caso está basada en el estatuto 1864, c. 122, inciso 4 que, entre otras cosas, prescribe que 'cualquiera que expenda, tenga en existencia u ofrezca en venta leche adulterada o a la que se le haya añadido agua o cualquiera otra substancia extraña,' será multado en la forma que allí consta. El acusado sostiene que la corte debió exigir al Ministerio Fiscal que durante el juicio presentase prueba de que él cometió esa infracción a sabiendas de que la leche estaba adulterada.

"Pero el estatuto no dice que se exige tal prueba, y es evidente que no fué la intención del legislador exigirla. El estatuto 1863, c. 140 sí la exigía esa prueba, y una de las razones que tuvo la Legislatura para revocarlo y sustituirlo por el que ahora está vigente, indudablemente fué la consideración de que en la mayor parte de

los casos sería prácticamente imposible probar el hecho de que el acusado tenía conocimiento de que la leche estaba adulterada, y también por creer natural, bajo todos conceptos, que el expendedor de leche asumiera el riesgo de saber que el producto que expende no está adulterado. Es sumamente importante que el público esté protegido contra fraudes que se cometen, en tan gran escala y con suma habilidad, en la adulteración de productos alimenticios por aquellos que se dedican a su venta; y si la Legislatura estima importante que los expendedores sean tenidos por responsables aun cuando no tengan conocimiento de que existe la adulteración, no vemos por qué no ha de ser razonable el que a esos mismos individuos se les haga cargar con toda la responsabilidad." *Comm.* v. *Farren,* 91 Mass., 489, 490.

"El delito perseguido por los estatutos de que estamos tratando es la venta de leche adulterada. La culpabilidad se establece por la prueba de que se consumó la venta de la leche, que, según el análisis exigido por la ley, resultó estar adulterada. No es necesario demostrar que el expendedor sabía que la leche estaba adulterada." *The People* v. *Henry Schaeffer,* 41 Hun., 23, 25.

La otra cuestión propuesta por el apelante es que no puede ser responsable criminalmente de los actos que haya podido ejecutar su empleado. Sin embargo, hemos resuelto lo contrario en el caso de *El Pueblo* v. *Barquet,* 19 D. P. R., 792, en el que dijimos:

"En cuanto a la insuficiencia de la prueba para sostener la sentencia contra Juan y Narciso Barquet, entendemos que ella demuestra suficientemente que el delito se cometió en la casa mercantil de Barquet Hermanos por un dependiente de la misma que actuaba dentro de las funciones de su cargo y demuestra, además, que los acusados son socios e intervienen directamente en los negocios de dicha casa mercantil, la que no es una corporación sino una sociedad. Siendo ello así es bien claro que dichos acusados pueden ser perseguidos y castigados individualmente por una violación de la Ley de Rentas Internas cometida por un dependiente que actuó por y para la sociedad."

Si bien es regla general que una persona no debe ser res-

ponsable de los actos de otra por la mera relación de principal y agente, sin embargo hay excepciones a esa regla. Muchas leyes, en consideración al bien general, imponen penas independientemente de la intención de violarlas, con el propósito de que teniéndose mayor cuidado en su cumplimiento se conserve la salud pública, que haría imposible la violación de la ley. Nuestra ley impone a la persona que vende leche el deber de que la venda pura y el incumplimiento del mismo se castiga como delito. El apelante se dedica al negocio de vender leche y por tanto importa poco si la vende por sí mismo o por medio de un empleado. Vendiendo leche adulterada o diluída se aumentan las ganancias y por consiguiente se deben soportar las consecuencias. En el caso de *People v. Roby,* 18 N. W., 362; 52 Mich., 577; 50 Am. Rep., 270, se declaró:

"El dueño de una taberna fué propiamente declarado culpable por el hecho de que su empleado lo abrió un domingo por la mañana sin su consentimiento o conocimiento, con el objeto de limpiarlo, habiendo vendido mientras tanto bebidas a un parroquiano que casualmente se presentó y que insistió en que se le vendieran."

Igual principio se sostiene en los casos de *Lehman* v. *District of Columbia,* 19 App. D. C., 217, y *State* v. *Burchinal,* 2 Har., 528.

No vemos motivo para la revocación de la sentencia apelada, la que debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf y del Toro.