EL PUEBLO, DEMANDANTE Y APELADO, *v.* MASSARI, ACUSADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Guayama en causa por adulteración de leche.

No. 2070.—Resuelto en junio 8, 1923.

DELITOS CONTRA LA SALUD PÚBLICA—VENTA DE LECHE ADULTERADA—PERITO QUÍMICO CAPACITADO.—Un empleado del Gobierno que mediante exámenes aprobados en el Servicio Civil desempeña por varios años el cargo de químico auxiliar del Laboratorio Insular dedicándose a análisis en general y en particular al de muestras de leche, está cualificado para declarar como perito en un juicio por venta de leche adulterada.

ID.—REGLAMENTOS DE SANIDAD SOBRE LECHE ADULTERADA—CONOCIMIENTO JUDICIAL.—Las cortes están obligadas a tomar conocimiento judicial de los reglamentos del Departamento de Sanidad que prescriben reglas para determinar lo que es leche adulterada.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. C. Domínguez Rubio.*

Abogado del apelado: *Sr. José E. Figueras, Fiscal.*

EL JUEZ ASOCIADO SR. FRANCO SOTO, emitió la opinión del tribunal.

Este es un caso por violación de la Ley sobre adulteración de leche, aprobada en marzo 10 de 1910.

El acusado fué declarado culpable y condenado a sufrir la pena de diez días de cárcel y las costas. Contra esta sentencia se ha interpuesto el presente recurso y el apelante ha señalado la comisión de los siguientes errores: 1°. La admisión por la corte inferior de la declaración del perito Rafael Barreras por haber sido impugnada su cualificación como tal perito; y 2°. La errónea apreciación de la prueba.

El testigo Barreras fué presentado por el gobierno en su carácter de químico auxiliar del Laboratorio Químico del Departamento de Sanidad. Este testigo declaró: haber ingresado en el servicio civil desde hace ocho años y haber pasado sus exámenes en el Board de Farmacia, aunque no obtuvo el título o diploma; que como químico auxiliar del Laboratorio Insular, se dedica a análisis en general, y por tanto, a análisis de leche. Con estos antecedentes la corte inferior admitió que dicho testigo estaba cualificado como perito para declarar en relación con el análisis practicado en la leche que fué ocupada en este caso, y por nuestra parte no encontramos que se haya cometido error alguno en su admisión al fin para que fué propuesto, declarando sobre el grado de la leche que fué ocupada en relación con el grado legal o *standard* establecido por los reglamentos de sanidad.

Es cierto que un título o diploma universitario lleva consigo la presunción de competencia, pero la falta del mismo no siempre implica la presunción de incompetencia, pues cuando como en el presente caso se trata de un empleado del gobierno, admitido al ejercicio de su cargo previo exámenes y teniendo la experiencia de varios años en su trabajo, es para la corte inferior determinar la admisión de un testigo perito en tales condiciones. Además, no se ha

demostrado que la ley exija un título universitario para el desempeño del cargo.

En este caso el perito declaró que examinó la muestra de leche ocupada y el análisis demostró un 26 por ciento de agua añadida artificialmente, llegando a la conclusión de que estaba adulterada. El perito para fijar el hecho de la adulteración se refirió al *standard* o grado legal establecido por el Departamento de Sanidad en sus reglamentos, pero el apelante sostiene, como uno de sus principales argumentos en cuanto a la insuficiencia de la prueba, de que no fueron presentados dichos reglamentos como prueba, lo que equivale a decir que las cortes no pueden tomar conocimiento judicial de tales reglamentos. Esta misma cuestión había sido levantada en el caso de *El Pueblo* v. *Rivera et al.*, de decidido por esta Corte Suprema en marzo 26, 1923, 31 D. P. R. 646 y en aquella ocasión dijimos lo siguiente:

"Resulta ahora bien claro y definido que el grado legal o *standard* de la leche a los efectos de poder distinguirse entre leche buena y leche adulterada, ha sido determinado de conformidad con lo que exige la ley y el mismo debe reconocerse con fuerza y efecto legal en la forma que se ha dejado establecida por el Departamento de Sanidad. La cuestión, sin embargo, levantada por el apelante y en la que descansa toda la argumentación de su alegato es la que, a pesar de la fuerza legal de tales reglamentos, las cortes no pueden tomar conocimiento judicial de los mismos, alegando que la corte inferior cometió error resolviendo el caso y declarando culpable al acusado, sin la presentación por El Pueblo de la prueba o existencia de tales reglamentos. Pero parece que fué el propósito de nuestra legislatura no solamente que se castigara con mano firme a los violadores de vender o tener para la venta leche adulterada, sino evitar la impunidad del delito por meros tecnicismos y fundándose en los efectos saludables de la ley, estableció de un modo terminante que las cortes de justicia deben tomar conocimiento judicial de tales reglas y reglamentos, lo que así se determina en el artículo 15, que dice:

" 'Se requiere de las cortes de justicia el tomar conocimiento

judicial de la adopción de dichas reglas y reglamentos y de la publicación de los mismos que se requiere por esta Ley.'

"Ante un precepto semejante, está demás discutir los casos citados por el apelante en su alegato, toda vez que el primero se refiere a resoluciones de la Comisión de Alimentos y el segundo a reglas promulgadas por el Jefe del Negociado de Pesas y Medidas, y tales casos, en vista de la declaración concreta que ha hecho la ley en cuanto a las reglas y reglamentos de Sanidad, no tienen aplicación al presente caso."

Los dos casos a que nos referimos son los mismos que refiere el apelante en el presente y son: *El Pueblo* v. *Garau & Co.,* 29 D. P. R. 1038, y *El Pueblo* v. *Cuadrado,* 27 D. P. R. 840.

El apelante alega además, que no estando la leche en un puesto donde se podía ofrecer en venta era necesario que haya prueba de la venta y que, no estando precintado el envase, el acusado no puede ser responsable de su contenido. Es un hecho que no fué contradicho y más bien admitido, que el acusado mandaba a vender leche a Patillas por conducto de un muchacho que declaró en el juicio. La ley no habla solamente de la venta como hecho consumado, sino que basta ofrecerla o tenerla para la venta, y no manteniendo el acusado un depósito o puesto de leche el medio de que se valía equivalía al depósito y en este sentido quedaba obligado a tomar todas las precauciones y pasar por las responsabilidades que la ley y reglamentos de sanidad de consuno exigen. Es verdad que no hubo prueba tendente a demostrar que se sorprendiera al acusado adulterando la leche, pero la ley no exige que quien la venda o la ofrece a la venta tuviese conocimiento de la adulteración para que el delito se cometa. Véase *El Pueblo* v. *Rodríguez,* 23 D. P. R. 839; *El Pueblo* v. *Gautier,* 20 D. P. R. 328.

Por las razones expuestas, la sentencia debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Wolf, Aldrey y Hutchison.