El Pueblo de Puerto Rico, demandante y apelado, *v*. Pablo Velázquez y Cecilio Cedrés, acusados y apelantes.

No. 2704.—*Visto:* Abril 30, 1926. *Resuelto:* Junio 23, 1926.

1. Alimentos *(Food)*—Leche—Leche Adulterada—Proceso y Castigo—Evidencia—Prueba de la Adulteración.—Puede estimarse como prueba concluyente para demostrar la adulteración un informe del laboratorio químico que, admitido sin oposición arroja un exceso de un 14 por ciento de agua añadida artificialmente sobre el grado legal *(standard)*, cuando, estando el acusado en condición de impugnarlo, nada hace en ese sentido.

2. Alimentos *(Food)*—Leche—Leche Adulterada—Proceso y Castigo—Evidencia—Suficiencia de la Misma.—Atendida la prueba en el caso de autos se resolvió ella no dejaba dudas sobre la culpabilidad de uno de los acusados, no así respecto al otro.

Sentencia de *Charles E. Foote*, J. (Primer Distrito, San Juan), condenando al acusado por delito de adulteración de leche.

*Luis Muñoz Morales*, abogado de los apelantes; *José E. Figueras*, abogado de *El Pueblo*, apelado.

El Juez Asociado Señor Franco Soto, emitió la opinión del tribunal.

Pablo Velázquez y Cecilio Cedrés fueron sentenciados cada uno a cumplir la pena de diez días de cárcel por violación de la sección 1ª de la Ley sobre adulteración de leche, aprobada en marzo 10, 1910.

La acusación establece que dichos acusados "ilegal, voluntaria y maliciosamente, tenían y ofrecían en venta como pura, leche de vaca adulterada artificialmente con agua."

El señalamiento de errores por los apelantes es como sigue:

"I.—La corte de distrito cometió error al declararlos culpables del delito que se les imputa.

"II.—La corte erró al estimar el informe del director del Laboratorio Químico, como prueba concluyente para demostrar la adulteración de la leche decomisada."

[1] El segundo error es una cuestión que ha sido suficientemente discutida y resuelta en los casos de *El Pueblo* v. *Vilá*, 24 D.P.R. 396; y *El Pueblo* v. *Rivera*, 31 D.P.R. 646. El informe del Laboratorio Químico fué admitido sin oposición de los apelantes y él arroja, aproximadamente, un

exceso de un 14 por ciento de agua añadida artificialmente en relación con la norma o grado legal (*standard*) fijado por el Departamento de Sanidad. Los acusados recibieron una muestra de la leche en el momento del decomiso y con ella estuvieron en condiciones de impugnar el informe del gobierno, si es que podía estar equivocado, pero nada hicieron en ese sentido.

[2] Se sostiene por el primer error que la prueba aportada no demuestra la culpabilidad de los acusados, alegando que la leche no había sido todavía entregada al dueño del puesto o depósito ni había sido recibida por éste ni ofrecida a la venta al público.

La prueba de cargo consistió, además del informe del Laboratorio Químico, en la declaración de los testigos José Fonfrías y Ramón Galindes. El primero era el inspector de Sanidad, quien tomó las muestras de la leche que remitió Pablo Velázquez, ganadero, a Galindes, dueño de un depósito sito en Santurce. El testigo explica cómo cogió la muestra en los momentos de llegar al depósito el carro que conducía la leche. De uno de los jarros que mandó a mover y que venía rotulado "Pablo Velázquez, Carolina," rompió el precinto y llenó tres envases iguales, entregando uno de ellos a Cecilio Cedrés, conductor, para entregarla a Velázquez, y los otros dos los remitió al Laboratorio Químico; que preguntó a Cedrés de quién era la leche y le dijo que de Pablo Velázquez. Y a repreguntas también dijo que en el momento que cogió las muestras no estaba la leche puesta a la venta.

El segundo testigo declaró en síntesis, que tenía un depósito que dedicaba a la venta de leche en Santurce; que estaba presente el día que llegó el inspector Fonfrías y tomó las muestras de la leche enviada por Pablo Velázquez y conducida por Cecilio Cedrés; que el inspector cogió la leche al apear el jarro a la acera; que no tenía instrucciones ningunas de Velázquez respecto a la leche que recibe de él antes de ponerla a la venta; que Velázquez le dijo que

cuando encontrara una leche floja que se la devolviera; que ese día la leche que examinó el inspector cuando la puso adentro como dió una prueba floja y no le prestaba garantía la puso a la parte afuera para devolverla.

La prueba no deja dudas en cuanto a la culpabilidad del acusado Pablo Velázquez, no así respecto al otro acusado Cecilio Cedrés, quien solamente aparece como un mero conductor sin nada en la acusación que le haga partícipe del delito.

Se esfuerza, sin embargo, el apelante Velázquez en tratar de demostrar, por las citas que hace de casos de esta corte (*El Pueblo* v. *Calderón*, 17 D.P.R. 484; *El Pueblo* v. *Gautier*, 20 D.P.R. 327, y *El Pueblo* v. *Andino*, 21 D.P.R. 225), que no aparece la prueba de ofrecerse en venta la leche que resultó adulterada. En primer lugar, convenimos con el fiscal que la jurisprudencia en su mayor parte citada no es aplicable por referirse a denuncias contra los dueños de puestos o depósitos dedicados a la venta de leche y aquí la acusación se dirige contra el dueño de la leche, la cual, en envases rotulados con el nombre del mismo y precintados, era remitida para la venta al dueño del depósito. El caso de *Calderón, supra,* parece más bien referirse a hechos semejantes al caso de autos. Esta corte en dicho caso dijo:

". . . . Se probó de modo suficiente que la leche venía de la lechería del apelante, apareciendo el nombre del apelante en el jarro de donde tomó la leche el inspector, habiendo declarado los testigos acerca del cambio o traslado que se hizo del jarro del poder del apelante al del inspector. Insiste el apelante en que no adulteró la leche y que no hubo prueba de su intervención, pero la venta de leche adulterada es el delito prescrito por el estatuto que es el que se ha probado. No importa conocer si la intención del apelante fué fraudulenta, pues el estatuto hace obligatorio en todo vendedor de leche que la venda pura si quiere ponerse a salvo de los rigores de la ley."

Es cierto que se cita el caso de *El Pueblo* v. *Martínez*, 32 D.P.R. 292, en que la muestra se tomó del carro en que era conducida, pero las circunstancias eran distintas, pues

no aparece que se tuviera vendida a algún depósito ni otro dato que indicara que se ofreciera en venta, único cargo que se hacía en la acusación.

En segundo término, la acusación en este caso, siguiendo al estatuto, comprende dos modalidades mediante las cuales puede cometerse el delito, independientemente una de otra, y una de ellas se refiere a que el acusado tenía en venta como pura, leche de vaca adulterada artificialmente con agua. Velázquez, ganadero, al remitir la leche de su vaquería a Galindes en envases precintados y rotulados con ·su nombre, revelaba su propósito, al desprenderse de ella, de que la tenía o tuvo para la venta. La declaración de Galindes en nada favorece a Velázquez, pues aquél afirmó categóricamente que le compraba la leche a Velázquez y que ''no tenía instrucciones ningunas de Velázquez respecto a la leche que se recibe de él antes de ponerla a la venta.''

En un alegato adicional el apelante alega que si se sostiene la culpabilidad del acusado debe modificarse la sentencia cambiando por multa la pena de cárcel, toda vez que la Ley No. 59 de marzo 10, 1910, que impone cárcel y por la que se rige este caso, fué sustituída por la Ley No. 77, aprobada en agosto 12, 1925, que establece una multa de $25 por la primera falta y cárcel en caso de reincidencia.

Esta petición la funda además el apelante en el principio general en materia penal que admite la retroactividad en todo lo que fuere favorable al acusado. La jurisprudencia citada, sin embargo, por el apelante para sostener dicho principio (16 C. J. 70–1) establece que la regla es aplicable siempre que no exista un estatuto disponiendo lo contrario. Y el Código Político en el artículo 44 prescribe lo siguiente:

''Art. 44.—La revocación de una ley creando un delito, no constituye impedimento para acusar o perseguir y castigar un hecho ya cometido con infracción de la ley así revocada, a menos que no se declare expresamente en la ley derogatoria el propósito de impedir tal persecución o castigo.''

Este artículo recientemente ha sido interpretado en el caso de *El Pueblo* v. *García & Rahola* 35 D.P.R. 17, y aunque se declaró que si bien no surtía efecto para las ordenanzas municipales, era aplicable a las leyes de nuestra Asamblea Legislativa.

*Por todo lo expuesto, debe confirmarse la sentencia apelada en cuanto a Pablo Velázquez, y revocarse respecto a Cecilio Cedrés, a quien se absuelve.*