EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN DÍAZ RIVERA, acusado y apelante. EL MISMO v. EL MISMO.

Nums. 9896 y 9897.—*Sometidos:* Abril 9, 1943. *Resueltos:* Mayo 25, 1943.

*Francisco R. Flores,* abogado del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo,* abogado de El Pueblo, apelado.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

Un inspector de la Comisión de Alimentos y Abastecimiento General radicó ante la corte municipal una denuncia "... contra Juan José Díaz Rivera y Juan Díaz Rivera, de la Sociedad Díaz Hermanos, S. en C., de Utuado, P. R., por delito Inf. Ley número 6, 1941, cometido de la manera siguiente: Que en 11 de mayo de 1942, y en la calle Betances de Utuado del Distrito Judicial Municipal de Utuado, que forma parte del Distrito Judicial de Arecibo, P. R., dichos acusados Juan José Díaz Rivera y Juan Díaz Rivera, allí y entonces, ilegal y voluntariamente, en su carácter de socios gestores de la Sociedad Mercantil Díaz Hnos. S. en C. de Utuado, constituída por escritura de 7 de agosto de 1937 ante el Notario de Utuado, Antonio E. Suliveres Colón, vendieron al comerciante al detall de esta jurisdicción, Gabriel Beauchamps Jr., un saco de 100 libras de arroz, números 38 marcados fh y Ca (sic), San Juan, artículo declarado de necesidad, transacción que efectuaron con Gabriel Beauchamps Jr. por el precio de ocho dólares, setenta y cinco centavos, según factura, a sabiendas de que obtenían con tal reventa un beneficio más alto del siete por ciento, como margen razonable sobre el costo de importación en las ventas al por mayor, de acuerdo con lo determinado por la Comisión de Alimentos y Abastecimiento General con aprobación del Gobernador de Puerto Rico, por Proclama del Boletín Administrativo número 745 de enero 21 de 1942, ..."

Se radicó también otra denuncia, redactada en el mismo lenguaje, alegando una venta similar efectuada el 4 de mayo de 1942. Ambos casos fueron juzgados conjuntamente. Juan José Díaz Rivera fué absuelto en ambas denuncias en la corte municipal. Juan Díaz Rivera fué declarado culpable en ambos casos ante dicha corte. En apelación, la corte de distrito dictó sentencias condenatorias, imponiéndole en cada caso 15 días de cárcel, $300 de multa, y el pago del doble de la cantidad cobrada en exceso de los precios fijados por la Comisión. Los casos se encuentran ante nos en apelación.

■■ Carece de mérito la contención del acusado al efecto de que las denuncias no expresan la sección de la Ley núm. 6 que ha sido infringida. Hemos resuelto repetidamente ''no ser necesario, en una denuncia presentada en una corte municipal, especificar la ley que se supone haber sido infringida, sino que basta exponer los hechos constitutivos del delito . . . '' (*El Pueblo* v. *Falcastro*, 17 D.P.R. 96, 98). Al mismo efecto, véase *El Pueblo* v. *Benítez*, 23 D.P.R. 339. Las denuncias en este caso claramente imputan un delito bajo el estatuto en cuestión.

Indicando que las denuncias se refieren a Juan José Díaz Rivera y a Juan Díaz Rivera como socios de Díaz Hnos. S. en C., el acusado afirma que la corte inferior cometió error al admitir en evidencia (*a*) una certificación del Registro Mercantil de Utuado acreditativa de la existencia de la sociedad Díaz Hnos., de la cual eran socios gestores Juan José Díaz Rivera y Juan Díaz Rivera, y (*b*) una factura demostrativa de que el arroz en cuestión fué comprado por Díaz Hnos. a Freiría Hnos. Estas denuncias fueron redactadas por una persona que no es experta en el conocimiento de la ley y radicadas en una corte municipal. No era necesario que fueran perfectas en cuanto a forma (*Pueblo* v. *Cordero*, 27 D.P.R. 329). Las denuncias tenían el propósito de imputar la alegada comisión de delitos por los individuos. Éstos fueron suficientemente identificados al designárseles como

socios gestores de Díaz Hnos. El hecho de que la frase S. en C. se añadiera inadvertidamente en la denuncia al nombre de la sociedad no tiene importancia en este caso. Hubo abundante testimonio que identificó al acusado como socio gestor de la firma envuelta en los hechos de este caso. Revocar una convicción criminal debido a errores basados en tales formalidades vanas, equivaldría a usar como talismán una precisión exagerada a que raras veces puede llegarse en la vida ordinaria.

■ El acusado se queja además de que se cometió error al dejar el inspector de transcribir en la denuncia el Boletín Administrativo número 745, y al no ser éste presentado en evidencia durante el juicio.

Después de disponer la creación de la Comisión de Alimentos y Abastecimiento General, la sección 1 de la Ley número 6, Leyes de Puerto Rico, 1941, Sesión Extraordinaria, dispone que

"\*    \*    \*    \*    \*    \*    \*

"La comisión declarará, con la aprobación del Gobernador, los artículos que habrán de considerarse de necesidad. Estas declaraciones serán proclamadas por el Gobernador.

"\*    \*    \*    \*    \*    \*    \*

"4. Tendrá poder, sujeto a la aprobación del Gobernador, para determinar los precios a que podrán venderse los artículos de necesidad por personas particulares, en cuyo caso se concederá un margen razonable de beneficios, y para determinar las cantidades que podrán venderse a cualesquier persona o personas y el modo de comprobar dichas ventas. Estas determinaciones serán proclamadas por el Gobernador; *Disponiéndose,* que tales precios serán fijados al público en sitio prominente y visible del establecimiento comercial.

"Cualquier persona que venda artículos a un tipo más alto que el determinado por la comisión, o en cantidades o a personas prohibidas por la comisión, será castigada por cada ofensa con una multa no menor de veinticinco dólares ($25) ni mayor de mil dólares ($1,000) y prisión por no más de seis (6) meses, y una pena adicional equivalente al doble de la cantidad cobrada en exceso de los precios fijados por la comisión en la transacción objeto del delito.

"\*    \*    \*    \*    \*    \*    \* "

No es necesario que examinemos de nuevo los casos de *Pueblo* v. *Cuadrado,* 27 D.P.R. 840, y *Pueblo* v. *G. Garáu & Cía.,* 29 D.P.R. 1038, citados por el acusado. Es suficiente indicar que los precios fijados de conformidad con la Ley núm. 6 no entrarán en vigor hasta que el Gobernador los haya proclamado. Por tanto, somos de opinión que las cortes pueden tomar conocimiento judicial de tal proclama emitida de acuerdo con el estatuto. En su consecuencia, era innecesario que la denuncia alegara el contenido del Boletín Administrativo número 745, o que el Pueblo presentara en evidencia una copia del mismo (Véase *Pueblo* v. *Sanjurjo,* 58 D.P.R. 649; *Pueblo* v. *Rivera et al.,* 31 D.P.R. 646, 647, 648; *Pueblo* v. *García Hidalgo,* 61 D.P.R. 640, resuelto el 25 de marzo de 1943). Da mayor fuerza a nuestra conclusión en este caso el hecho de que es improbable que los comerciantes desconozcan tales proclamas, toda vez que tienen la obligación de exhibirlas al público en sus establecimientos.

El acusado finalmente se queja de la actuación de la corte inferior al pesar la evidencia. Aparentemente no existe disputa seria de su parte en cuanto a que el testimonio del Pueblo, de ser creído por la corte de distrito, justificaba un fallo al efecto de que el arroz en cuestión había sido vendido por un empleado de Díaz Hnos., como mayoristas, a un precio que era mayor que el costo de importación más el siete por ciento, que era el precio al por mayor fijado para el arroz en el Boletín Administrativo 745. Su defensa en el juicio consistió principalmente de un esfuerzo para demostrar mediante testimonio, al cual no dió crédito la corte de distrito, al efecto de que el arroz en cuestión era de una marca superior a la expuesta en la denuncia, lo que le autorizaba a venderlo al precio a que admitió haberlo vendido. Su posición en apelación se resume por la manifestación contenida en su alegato al efecto de que "la posible responsabilidad del coacusado Juan Díaz Rivera no surge de un acto propio de éste sino de la venta de arroz que pudiera haber

realizado en el establecimiento de la sociedad 'Díaz Hnos. S. en C.', algún otro socio gestor o algún empleado de dicho establecimiento''.

Como regla general, un principal o patrono no es responsable criminalmente por las actuaciones de su agente o empleado, a menos que anteriormente haya autorizado o consentido tales actuaciones. Pero existen ciertas excepciones a esta doctrina. Miller *on Criminal Law* §80, págs. 248–9, la expone como sigue:

''Como hemos visto, muchos estatutos imponen la penalidad, prescindiendo de cualquier intento para violarlos y sin considerar la ignorancia o error de hechos, los cuales constituirían una excusa de acuerdo con el derecho común. Existen estatutos, muchos de los cuales tienen como propósito la reglamentación de la venta de bebidas embriagantes, que prohiben la realización de ciertos actos por ciertas clases de personas o en ciertos lugares, y que bien expresamente o por inferencia, disponen que tales personas o los dueños de dichos lugares serán responsables de tales actos de sus subalternos, aun cuando se cometan sin su conocimiento o en contra de sus instrucciones. Ejemplo de ello son muchos estatutos que prohiben la venta de bebidas embriagantes sin licencia o en violación de los requisitos de dicha licencia, o que prohiben la venta a menores o a personas embriagadas, o que prohiben que las cantinas permanezcan abiertas los domingos o después de una hora determinada, o que prohiben que se encubran las ventanas de las cantinas. Sin lugar a dudas, es necesaria una expresión clara de la intención de la Legislatura para justificar la interpretación de un estatuto en el sentido de que impone penalidad a una persona por un acto realizado sin su conocimiento o contra sus instrucciones, y, a menos que surja tal intención, debe prevalecer la regla general de que una persona no es responsable criminalmente por actos que no ha autorizado; pero, cuando el estatuto así lo dispone, es válida. Existe gran conflicto, real o aparente, en las decisiones, y diferentes cortes han dado con frecuencia distintas interpretaciones a disposiciones similares. La cuestión a determinar en cada caso debe ser si hubo la intención de exigir a las personas dentro de la clase designada que vigilen, a riesgo propio, el que los actos prohibidos no se realicen.''

Apenas es necesario que expongamos los fines que indujeron a la Legislatura a aprobar la Ley núm. 6. Es un am-

plio estatuto que autoriza acción drástica con el fin de controlar artificialmente en tiempos de emergencia el delicado mecanismo de los precios, con los cuales normalmente no interviene el gobierno. Conceder inmunidad a los comerciantes por infracciones a tal estatuto, como regla general, con sólo probar que no intervinieron personalmente en la transacción física de la venta del artículo en cuestión, destruiría toda esperanza de poner en vigor el estatuto de una manera efectiva. No podemos concluir que tal fuera la intención de la Legislatura.

Para confirmar la convicción en el presente caso, no es necesario por el momento que vayamos al extremo de resolver que al aprobar este estatuto "fué la intención exigir a las personas dentro de la clase designada, que vigilen, a riesgo propio, el que los actos prohibidos no se realicen". Como hemos visto, aquí la defensa no se predicó en teoría alguna de violación por el empleado de las instrucciones del patrono, sino en testimonio, al cual la corte de distrito no dió crédito, de que el precio cobrado era el correcto debido a la marca superior del arroz. En ausencia de testimonio convincente, o de algún testimonio, de que el empleado actuó en contra de las instrucciones específicas del acusado— testimonio que, de haberse ofrecido, hubiera levantado una cuestión que expresamente dejamos sin resolver—creemos que es de aplicación el lenguaje usado en *Pueblo* v. *Cordero*, 27 D.P.R. 329. Al confirmar la sentencia condenatoria de un patrono por el delito de permitir que sus empleados trabajasen después de la hora del cierre fijado por la ley, dijijimos en dicho caso, a la página 332, que "en ausencia de prueba en contrario debía presumirse que lo hacían con permiso del dueño".

El acusado, sin embargo, afirma que en este caso debe aplicarse la regla general, y que la actuación criminal del empleado, como agente, de haber ocurrido, no puede imputarse al principal, el acusado. Para sostener su posición

cita el caso de *Pueblo* v. *Arce*, 34 D.P.R. 340. Nada encontramos en dicha opinión que indique que esta corte allí consideró la excepción a la regla general mencionada en el presente caso. Resolvemos que los hechos y el estatuto envueltos en este caso son más análogos a aquellos casos en que hemos hecho responsables a los patronos por adulteración de leche (*Pueblo* v. *Rodríguez*, 61 D.P.R. 732, resuelto en abril 5, 1943) e infracción de leyes de rentas internas (*Pueblo* v. *Barquet et al.*, 19 D.P.R. 792) realizadas por sus empleados. Para una discusión inteligente de este aspecto del derecho penal, véase Sayre, *Criminal Responsibility for the Acts of Another*, 43 Harv. L. Rev. 689; Sayre, *Public Welfare Offenses*, 33 Col. L. Rev. 55.

Los demás errores señalados son demasiado frívolos para discutirse.

*La sentencia de la corte de distrito será confirmada.*