EL PUEBLO DE PUERTO RICO, denunciante y apelado, *v.* MÁXIMO RUIDÍAZ PASTRANA, acusado y apelante.

*Número:* CR-63-29 . *Resuelto:* 16 de octubre de 1963

*Benicio Sánchez Castaño,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *J. F. Rodríguez Rivera, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

El Fiscal de la Sala de San Juan del Tribunal Superior de Puerto Rico, presentó contra el apelante una acusación por un delito de Adulteración de Leche, en grado subsiguiente, porque el 18 de abril de 1960, "ilegal, voluntaria y maliciosamente, tenía y ofrecía para la venta como pura, para consumo humano, leche de vaca adulterada artificialmente con agua". La ilustrada Sala sentenciadora declaró al acusado apelante culpable y lo condenó a seis meses de cárcel.

En la apelación ante nos, se señalan los siguientes errores: (1) Erró el Juez sentenciador al determinar que la leche sometida a prueba estaba adulterada; (2) Erró el Juez sentenciador al declarar culpable al acusado apelante del delito que se le imputó a pesar de la insuficiencia de la prueba.

1—En cuanto al extremo de la adulteración, el argumento del apelante es el siguiente:

La Sec. 792–13 del Reglamento Núm. 8 del Secretario de Salud—24 R.&R.P.R. pág. 101—dispone:

"Toda leche se considerará adulterada si aparece con los siguientes datos analíticos:

    (1) En el suero acético:

        (A) Una cantidad menor de 0.715 gramo de materia mineral por cada 100 c.c., y al mismo tiempo.

        (B) Una cifra menor de 39.0 de lectura en el refractómetro de inmersión a 20° C.

    (2) En el suero agrio de la leche cortada natural:

        (A) Una cantidad menor de 0.73 gramo de materia mineral por cada 100 c.c. y al mismo tiempo.

        (B) Una cifra menor de 38.3 de lectura en el refractómetro de inmersión a 20° C.

(3) (A) Una cantidad menor de las expresadas para materia mineral en el suero acético o en el suero agrio de la leche cortada natural en los incisos 1 y 2 de esta sección, y al mismo tiempo.

(B) Una cifra menor de 36.0 de lectura del suero cupratado en el refractómetro de inmersión a 20° C."

■ Por lo tanto, de acuerdo con dicho Reglamento, para que una leche se considere adulterada tienen que concurrir todos los resultados indicados en los incisos (1), (2) y (3) de la Sec. 792–13. Tal interpretación no es correcta.

■ Los incisos (1), (2) y (3) de la Sec. 792–13 del Reglamento proveen tres distintos métodos para comprobar la adulteración de la leche y basta que se establezcan los datos analíticos de cualquiera de ellos para que la adulteración se considere hecho establecido mediante testimonio pericial, y en caso de no ser satisfactoriamente impugnado, prueba concluyente: *Pueblo* v. *Velázquez*, 35 D.P.R. 599 (Franco Soto) (1926), cita precisa a las págs. 599–602. Si interpretáramos la Sección del Reglamento en la forma propuesta por el apelante, dicho Reglamento estaría en pugna con las disposiciones de la Ley que establece el delito y no podría prevalecer.

2—En cuanto al extremo de la insuficiencia de la prueba creemos que el acusado apelante tiene razón. Después de la enmienda que introdujo la Ley Núm. 77 de 17 de junio de 1955 a la Ley que castiga la adulteración de leche, la sec. 1ra. de dicha ley, que es la que define el delito, lee así:

"Sección 1.—Toda persona que adulterare o diluyere leche y toda persona que, así adulterada o diluída, la vendiere, ofreciere, o tuviere en venta, o que la transportare o almacenare con el fin de dedicarla al consumo humano, o con el fin de someterla al proceso de pasteurización o a cualquier otro proceso en preparación para consumo humano, y toda persona que usare leche adulterada o diluída para fines industriales, cuando se destine a la preparación de alimentos para el consumo humano, será culpable de delito menos grave y convicta que fuere, castigada en la primera violación con multa no menor de veinticinco (25) dólares, ni mayor de cien (100) dólares. La reincidencia se

castigará con pena de cárcel no menor de seis meses ni mayor de un año, multa de quinientos (500) dólares y la revocación de la licencia."

En este caso, al acusado apelante se le imputó tener y ofrecer en venta para el consumo humano leche de vaca, adulterada. El único testigo que intenta conectar al acusado con la comisión del delito es el Sr. Ramón López Collazo y su testimonio no pasó más allá de su mera identificación oficial:

"FISCAL BAUZÁ:

P. ¿Su nombre?

R. Ramón López Collazo.

P. ¿Qué cargo tiene?

R. Inspector de Saneamiento.

P. ¿Dónde trabajaba para el 18 de abril de 1960?

R. En Loíza.

LIC. SÁNCHEZ:

Acepto todo eso.

FISCAL BAUZÁ:

¿Acepta que para el 18 de abril de 1960 él tomó una muestra en la lechería de Máximo Ruidíaz Pastrana?

LIC. SÁNCHEZ:

Y que fue enviada a Sanidad. Una de las botellas se la dieron a él y otra a Sanidad, y el número era ése. No vengo con discusiones.

FISCAL BAUZÁ:

¿Admite todo lo que dice la acusación?

LIC. SÁNCHEZ:

Admito que este señor tomó la muestra y la mandó al laboratorio en la fecha alegada en la acusación.

FISCAL BAUZÁ:

¿Admite que tenía, para la venta y consumo humano, leche adulterada?

LIC. SÁNCHEZ:

No.

FISCAL BAUZÁ:

¿Admite lo que dice el resto de la acusación, o sea, la reincidencia?

Lic. Sánchez:
   Sí, también.

Fiscal Bauzá:
   Vamos a poner a declarar al químico.

Lic. Sánchez:
   Admito la capacidad extraordinaria de la persona que está sentada ahí.

Hon. Juez Frank:
   Más tiempo ganamos sin admitir."

   Como se ve, entre el juego movido de las admisiones, queda flotando en el aire, el hecho realmente delictivo: Si el acusado tenía o no tenía para la venta y consumo humano, leche adulterada. Un segundo intento del Fiscal para lograr una admisión específica sobre el verdadero hecho delictivo tiene el mismo resultado negativo del primer intento (T.E. pág. 9 *in fine*). *Siendo esto así, procede declarar inocente al acusado.*